CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Brian Whitaker**, | **Case No**. |
| Plaintiff, | |
| v. | **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |
| **What's On Third?, Inc**., a California Corporation; **Cococopia Restaurant LLC**, a California Limited Liability Company; and Does 1-10, | |
| Defendants. | |

Plaintiff Brian Whitaker complains of What's On Third?, Inc., a California Corporation; Cococopia Restaurant LLC, a California Limited Liability Company; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is substantially limited in his ability to walk. He suffers from a C-4 spinal cord

1

injury and uses a wheelchair for mobility.

2. Defendant What's On Third?, Inc. owned the real property located at or about 1708 N. Las Palmas Avenue, Los Angeles, California, in November 2018.

3. Defendant What's On Third?, Inc. owns the real property located at or about 1708 N. Las Palmas Avenue, Los Angeles, California, currently.

4. Defendant Cococopia Restaurant LLC owned Rusty Mullet located at or about 1708 N. Las Palmas Avenue, Los Angeles, California, in November 2018.

5. Defendant Cococopia Restaurant LLC owns Rusty Mullet ("Bar") located at or about 1708 N. Las Palmas Avenue, Los Angeles, California, currently.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8. Pursuant to supplemental jurisdiction, an attendant and related cause

Complaint

of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the Bar in November 2018 with the intention to avail himself of its goods or services, motivated in part to determine if the defendants comply with the disability access laws.

11. The Bar is a facility open to the public, a place of public accommodation, and a business establishment.

12. Paths of travel are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Bar.

13. Unfortunately, a ramp runs up to the entrance of the Bar but it did not have a level landing on the day of plaintiff's visit. It terminated at the door and there was no level landing whatsoever.

14. As a result, plaintiff was forced to tip his wheelchair back, which is dangerous and scary for plaintiff, in order to enter.

15. Currently, the ramp that runs up to the entrance of the Bar does not have a level landing. It terminates at the door and there is no level landing whatsoever.

16. Bar counters and tables are another facilities, privileges, and advantages offered by Defendants to patrons of the Bar.

17. Unfortunately, there was not an accessible portion of the bar counter, nor were there accessible tables near the bar area.

18. The bar counter was 42 inches high and the tables were also 42 inches

Complaint

high.

19. While there were two tables 34 inches high, one of the tables by the entry door was used as a coat rack. The other table, which was located next to the interior wall (under the windows), was blocked by 2 cocktail tables.

20. Restrooms also are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Bar.

21. The restroom mirror was mounted on the wall so that its bottom edge was more than 40 inches above the finish floor. In fact, the restroom mirror was about 50 inches high.

22. The plumbing underneath the sink was not wrapped to protect against burning contact.

23. Currently, the restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the finish floor.

24. Currently, the plumbing underneath the sink is not wrapped to protect against burning contact.

25. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

26. Plaintiff personally encountered these barriers.

27. Even though the plaintiff did not confront the barrier, a second restroom also had a mirror that was located about 50 inches in height. Additionally, the plumbing under the sink was not wrapped to protect against burning contact.

28. This inaccessible facility denied the plaintiff full and equal access and caused him difficulty.

29. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

30. The barriers identified above are easily removed without much

Complaint

difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

31. The mirror could be lowered at little to no cost.

32. Insulation can be installed under the sink at a cost of no more than $25.

33. Plaintiff will return to the Bar to avail himself of its goods or services and to determine compliance with the disability access laws. He is currently deterred from doing so because of his knowledge of the existing barriers. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again.

34. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

35. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

Complaint

36. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

37. Ramps must have a level landing at both the bottom and top of the ramp. 2010 Standards § 405.7.

38. Here, there is no level landing at the entrance of the Bar.

39. Where fixed tables are provided, at least 5 percent, but not less than one, of the fixed tables shall be accessible. 2010 Standards § 226.1. To be

accessible, the table surface cannot be higher than 34 inches above the floor. 2010 Standards § 902.3. Moreover, there must be knee clearance for wheelchair users measuring at least 27 inches high, 30 inches wide, and 19 inches deep. 2010 Standards § 306.3 (the 2010 Standards actually require a different depth).

40. Here, the failure to provide accessible tables is a violation of the law.

41. Where food or drink is served at counters exceeding 34 inches in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches in length minimum shall be provided that is no higher than 34 inches above the floor or service shall be available at accessible tables within the same area. 2010 Standards § 226.1. If seating is provided for persons in wheelchairs at the counter or bar, there must be knee clearance for wheelchair users measuring at least 27 inches high, 30 inches wide, and 19 inches deep. 2010 Standards § 306.3 (the 2010 Standards actually require a different depth).

42. Here, the failure to provide an accessible counter/bar is a violation of the law.

43. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 2010 Standards § 603.3.

44. Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA.

45. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 2010 Standards §606.5.

46. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

47. The Safe Harbor provisions of the 2010 Standards are not applicable here because the conditions challenged in this lawsuit do not comply with the 1991 Standards.

Complaint

48. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

49. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

50. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

51. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

52. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

53. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

Complaint

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: January 29, 2019        CENTER FOR DISABILITY ACCESS

By: _____

Chris Carson, Esq.
Attorney for plaintiff

Complaint